**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | No. 21-cr-355-2 (RBW) |
| | : | |
| v. | : | |
| | : | |
| THOMAS ROY VINSON, | : | |
| | : | |
| *Defendant*. | : | |
| | : | |

**THOMAS VINSON'S SENTENCING MEMORANDUM**

Defendant, Thomas Vinson, by and through his undersigned counsel, submits his Memorandum in support of his sentencing pursuant to 18 U.S.C. § 3553.

## I. Introduction

On January 6, 2021, Thomas Vinson and his wife walked into the United States Capitol. They entered through an open door. In the less than 30 minutes that they were inside, they did not break, damage, or steal any property; hurt, injure, accost, or threaten law enforcement (or anyone else); go into any private office space or proceed to the well of the House or the Senate. Mr. Vinson was not involved in planning or leading any of the activities that the crowd was engaged in on January 6, 2021, nor was he associated with any of the groups reported in the media to have been responsible for certain aspects of what occurred that day.

Mr. Vinson knows that, notwithstanding these facts, his mere participation and entry into the Capitol played a role in the events that transpired. He is a quiet man who has lived a life free from crime, and who has worked every day to provide for his family. The images of what happened on January 6, 2021 will remain with him for the rest of his life, and his association with that day constitutes a permanent stain on his life, as his connection with the events at the Capitol has been

edged in stone, with thousands of stories and articles on the Internet about his arrest.  Mr. Vinson cannot change the past, but can only learn from it, and work to live a life going forward worthy of forgiveness.  If he could do it all over again, he would not have entered the Capitol that day.  Mr. Vinson is extremely remorseful for his own conduct, and for those injured and the damage that occurred that day.

Mr. Vinson's sincere remorse is not measured by his words, but rather confirmed by his actions following January 6, 2021, as he did *everything* that the criminal justice system could possibly hope and expect from someone who wants to accept full responsibility and atone for his actions.

Mr. Vinson and his wife cooperated with law enforcement for months, providing detailed information regarding their involvement on January 6, 2021, what they knew, what evidence they had, and what they saw.  Their cooperation began *before* they retained counsel, and *before* they had any knowledge of the charges against them.  They offered, in January of 2021, to turn over all of their electronic devices for inspection to the FBI (who declined to take them up on that offer at that time). Mr. Vinson's wife voluntarily delivered to the FBI clothing that the Vinsons wore on January 6, 2021. The Vinsons did not demand that the FBI produce any warrants, and they never asserted their right to remain silent.  They were quintessential voluntary cooperators from the start.

After he was charged, Mr. Vinson waived his right to a preliminary hearing, agreed to toll time under the Speedy Trial Act, and notified the Government that he would plead guilty immediately on April 1, 2021, approximately five weeks after being charged, to the *same charge* for which this Court will be sentencing him on October 22, 2021.  When the Government indicated that Mr. Vinson could not receive a plea offer unless he cooperated with the Government — without the benefit of a debrief letter or a cooperation agreement (unheard of to his counsel who are both former prosecutors) — Mr. Vinson did so voluntarily and without hesitation.  He agreed to meet with the FBI and

permitted the FBI to search his electronic devices, and he provided the Government recordings from

January 6, 2021, which aids in the prosecution of others.

There is a reason Mr. Vinson received one of the *earliest* plea offers in the Government's

investigation.  His conduct that day is significantly distinguishable from the hundreds of other

defendants before this Court and, unlike so many of those individuals, Mr. Vinson cooperated

completely and extensively with the Government from the earliest possible moment.  It is these

extraordinary circumstances that have lead the Government, with the full attention of the nation

watching, to ask for a sentence of probation.  A sentence that is appropriate, a sentence that is fair,

and a sentence that allows Mr. Vinson to remain on a path of redemption.

As this Court asked at the conclusion of Mr. Vinson's plea hearing, how can this Court explain

to other countries when the Court gives lectures on why our country is a "shining light upon a hill

because of what happened that day." The answer is clear.  In our country, we judge a man by *his*

actions alone, not those of others; we evaluate one day in his life, while also considering all of the

other years in his life; we reward those who sincerely accept full responsibility for their actions; and

we value actions taken to assist in the successful prosecution of other individuals.  Values that

separate this country from so many other countries; values that support a sentence of probation in this

case.

II.     **Background**

As set forth in his Statement of Offense (D.E. 29), Mr. Vinson traveled with his wife to

Washington, D.C. and they entered the first floor of the United States Capitol on January 6, 2021 at

2:18 p.m. They walked around inside and left within thirty minutes.

Following the events of January 6, 2021 (which are discussed, in terms of Mr. Vinson, below),

the Federal Bureau of Investigation interviewed both Mr. Vinson, and his wife, Lori Vinson, at their

home in Morganfield, Kentucky in January, 2021.[1]   The Vinsons cooperated, providing detailed

information regarding all of their involvement on January 6, 2021, what they knew, what evidence

they had, and what they saw.  This happened *before* they retained counsel, and *before* they had any

knowledge of charges against them.  They offered, at that time, to turn over all electronic devices

they had for inspection to the FBI (who declined to take them up on that offer at that time).  They did

not demand a warrant, and they did not assert rights they had to remain silent.   They were

quintessential cooperators from the start.

On February 23, 2021, Defendant Thomas Vinson was arrested and initially arraigned in the

United States District Court for the Western District of Kentucky, charged with four misdemeanors

concerning his entry into, and presence within, the United States Capitol on January 6, 2021.  The

Government's charging decision in this case reflected the reality and scope of Mr. Vinson's

participation in the events of January 6, 2021: he was not an organizer or fomenter of the events of

January 6, 2021, he did not force entry into the Capitol, he did not destroy or steal property within

the Capitol, he did not enter sensitive or private areas of the Capitol, he did not threaten or injure law

enforcement within the Capitol.  No superseding Information or Indictment was ever filed in this case

prior to the Vinsons entry of a guilty plea on July 27, 2021.

Mr. Vinson waived a preliminary hearing in the Western District of Kentucky, and, when

arraigned in this Court, continued his cooperation by waiving a preliminary hearing on March 16,

2021, when he was arraigned in this district.

A mere few weeks later, on April 1, 2021, Mr. Vinson, through counsel, reached out to the

United States, accepting responsibility, and offered to enter a plea regarding his involvement in the

---

[1] Morganfield, KY is a small rural town in Western Kentucky, which has as its claim to fame, that it
served as the site of Abraham Lincoln's only political speech in the Bluegrass State.

events of January 6, 2021.  The Government, for its part, responded, indicating that it was not in a

position then to assess or consider any plea agreements at that time.  On April 8, 2021, Mr. Vinson,

*again*, through Counsel, offered to enter a plea regarding his involvement in the events of January 6,

2021.  And, *again*, the United States was not in a position to agree.

On April 23, 2021, Mr. Vinson, *again*, through Counsel, offered to enter a plea regarding his

involvement in the events of January 6, 2021.  This time, the United States responded on April 25,

2021, and indicated that to consider any plea, in any case, it was requiring Mr. Vinson to debrief with

the FBI, and to permit the FBI to access to all electronic devices (not so much as to ascertain the

particular Defendants' involvement, but rather to help build evidence against others).[2]

On May 11, 2021, Mr. Vinson, through Counsel, provided to the United States all recordings

in his possession from January 6, 2021, and thereafter, he debriefed with the FBI as requested by the

United States.  Mr. Vinson also requested permission from his employer to permit the FBI to inspect

---

[2] Leave no doubt, Mr. Vinson received one of the earliest pleas in the Government's investigation because of his exceptional cooperation with the Government. This is also why the Government is asking for a sentence of probation in this case.

It is unclear why the Government now alludes to certain video that was not provided, *which it already has*, or statements made by the Vinsons regarding not encountering resistance when entering the Capitol, even though the photograph contained herein shows no physical conflict with law enforcement when the Vinsons entered.

These comments in no way meaningfully undermine in any way the Vinsons extensive cooperation in this matter in the unprecedented circumstance of a defendant being required to provide affirmative evidence in order to be allowed to enter a guilty plea. As the Government concedes in its sentencing memorandum, a sentence of probation is warranted in this case and notwithstanding its surprising comments, it has "no [] proof" that Mr. Vinson "concealed evidence." *See* Gov't Mem. at 19 (D.E. 44). To punish the Vinsons now for their faith that the Government would take their cooperation into consideration at sentencing is tantamount to a denial of due process. *See*, *e.g.*, *United States v. Stolt-Nielsen S.A*, 524 F. Supp. 2d 609, 615 (E.D. Pa. 2007) (quoting *United States v. Meyer*, 157 F.3d 1067, 1076 (7th Cir. 1998)) ("With respect to immunity agreements, due process requires prosecutors to scrupulously adhere to commitments made to suspects in which they induce the suspects to surrender their constitutional rights in exchange for the suspects giving evidence that the government needs against others which simultaneously implicates themselves").

that device as well (he had his work phone on his person on January 6, 2021), debriefed his employer about his presence in the Capitol on January 6, 2021 and charges stemming from it, and secured their permission for the FBI to inspect that device.  To be clear: he did not have to do any of this.  He chose to do it to cooperate with the government.

Ultimately, Mr. Vinson did just as he offered to do back in early April, 2021 and plead guilty to one misdemeanor charge of 40 U.S.C. 5104(e)(2)(G), which is punishable with a fine of up to 6 months imprisonment and a $5,000 fine.

Finally, Mr. Vinson has been subject to supervision, including restrictions on his liberty, since February 23, 2021.  During those more than 7 months, he has consistently met all the terms and conditions of his release.

**III.    Facts Concerning the Offense**

The events of January 6, 2021 marked a low point for democracy and the democratic process in the United States, coming, unfortunately, after years of heated rhetoric in the political process that build distrust in our institutions and democratic process.  Tom and Lori Vinson traveled to Washington, D.C., for the purpose of attending a "Stop the Steal" rally organized by then President Trump.  After that event ended, they then proceeded down to the Capitol with the crowd (they were neither at the very front, nor the rear of the crowd that formed), and entered the Capitol.  They did not break into, or force entry into the Capitol, nor did they encounter any law enforcement or others directing them to leave as they entered the Capitol.

As the FBI report reflects, "[a]t approximately 2:18 pm, LORI VINSON and THOMAS VINSON were observed entering the U.S. Capitol Building through the 1st Floor Senate Wing Door." At that time, the Capitol had been breached for some 15 minutes according to both media sources as well as the Government's submittals in this and other cases.  That period of time is significant only

in that it meant that those entering at the time that the Vinsons did, were unlikely to have encountered

law enforcement on the steps or entry places (because they were not yet posted there) and were not

at the front of the crowd, meaning they were not in a position to have seen the breach of the Capitol

occur.  The photo below depicts the Vinson's entry:[3]



---

[3] As made clear at the conclusion of the parties' plea hearing, this Court needs no reminder of what occurred on January 6, 2021. For some unknown reason, the Government chooses to include in its sentencing memorandum photographs of the breach of the Capitol through the smashing of windows, even though Mr. Vinson did not partake in any destruction of property and a discussion of a mob pushing law enforcement officers though Mr. Vinson did not partake in any assault of any officers. *See* Gov't Mem. at 1-2 (confirming that the Government has "no information that [Mr. Vinson] personally committed violent or destructive offenses").

As discussed above, we judge a man by *his* actions alone and do not attribute conduct to him that everyone else undertook. While the Government acknowledges this in their sentencing memorandum (*id.* at 15 ("[E]ach defendant should be sentenced on their individual conduct")), it, nonetheless, discusses extensively what others did at the Capitol in the absence of any threatening, assaultive, violent, or destructive conduct committed by the Vinsons. Our system of justice does not operate in this manner.

At approximately 2:31 pm, LORI VINSON and THOMAS VINSON were observed in the "OAP Corridor" of the 1st Floor of the U.S. Capitol Building on U.S. Capitol surveillance video:



They did not force their way past law enforcement, and, after encountering law enforcement in that hallway, left the Capitol. They were present in the Capitol for approximately 30 minutes. In that time, Mr. Vinson did not break, damage, or steal any property; hurt, injure, accost, or threaten law enforcement (or anyone else); go into any private office space, or proceed to the well of the House or the Senate. Mr. Vinson was not involved in any planning or leading any of the activities that the crowd was engaged in on January 6, 2021, nor was he associated with any of the groups reported in the media to have been associated with certain aspects of what occurred that day. He was, in short, following the crowd.

We offer these facts not as excuses, because there are no excuses for the violation of law that occurred that day, but rather and solely to place into context Mr. Vinson's activities on January 6, 2021, including for comparison purposes with others who did engage in those activities that day, and for purposes of weighing his activities under comparator factors that the Government has set forth in

other sentencing memoranda, and which, we expect, they will set forth in their sentencing memoranda in this matter.

## IV.     Facts Concerning Mr. Vinson

Mr. Vinson, age 54, is married to Lori Vinson, and has a high school diploma.  He is an honorably discharged Air Force veteran, having served from 1984 through 1988 as an EMT/medic. And, despite a rough upbringing, has led a crime free and productive life, with the exception of two DUI offenses in Kentucky in 1992 and 1996 – both more than 20 years ago.[4]  He has four adult children, and two step-children.  He has stable and long-term employment. Based on the United States Probation Office's analysis of Mr. Vinson and his family's current finances, it appears that "he is not able to pay a fine in addition to the restitution owed in this case." Presentence Report, ¶ 64 (D.E. 41).

## V.     Law and Argument

Mr. Vinson now faces a sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

Pursuant to 18 U.S.C. 3553 (and specifically those portions of it that are applicable to this misdemeanor, non-guideline sentence), factors this Court is to consider in imposing the sentence, which should be sufficient, but not greater than necessary, to comply with the purposes of sentencing is:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

---

[4] While the Sentencing Guidelines do not apply to this matter, the remoteness in time of these misdemeanor offenses would not count towards criminal history if the guidelines did apply.  USSG §4A1.2(e)(2).

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

…

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

### A.     The Nature and Circumstances of the Offense

In various sentencing memoranda, concerning the January 6, 2021 Capitol cases, the United States Attorney has recognized that not all actors are equal in terms of culpability, and the Government has systemically been setting forth factors for District Courts to consider in relation to January 6, 2021 sentences,[5] including: (1) whether, when, and how the defendant entered the Capitol building; (2) whether the defendant engaged in any violence or incited violence; (3) whether the defendant engaged in any acts of destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored, law enforcement; and (9) whether the defendant otherwise exhibited evidence of remorse or contrition.   We submit that two additional factors also should be considered: (10) whether the

---

[5] *See*, *e.g.*, *United States v. Reeder*, 1:21-cr-166, Government Sentencing Memoranda at DE#26 at pp. 6-7.

defendant was involved with planning or coercing the events of January 6, 2021;[6] and (11) whether the defendant timely offered to accept responsibility for his or her involvement and offered to enter a plea of guilty at a time that would have avoided the use of limited judicial, investigative, and prosecutorial resources.[7]

Defendant Thomas Vinson entered the through the 1st Floor Senate Wing Door, and did not force entry. This factor weighs in favor of the Defendant.[8] Mr. Vinson neither engaged in, nor incited violence, nor did he encourage, promote, or otherwise tolerate any violence, which shows both the third and fourth factors also weigh in his favor. Mr. Vinson did not destroy any evidence, and, in fact, fully cooperated with the Government law enforcement to provide all evidence in his possession upon his first contact with the FBI in early January, 2021, even though he was under no legal obligation to do so. Again, this fifth factor weighs strongly in his favor. Mr. Vinson was in the Capitol a limited period of time, and did not travel to or enter any rooms or offices in the Capitol, the Capitol Rotunda, or the Senate or House Chamber, which weighs in his favor.[9]

The Defendant here made no statements on social media, and none to or in traditional media,

---

[6] The Government has itself pointed to this as a relevant factor, *see*, *e.g. United States v. Morgan*, 1:21-cr-00164 at D.E. 22, p. 6.

[7] *See*, *e.g.*, *United States v. Bustle*, 1:21-cr-238, Government Sentencing Memoranda, at D.E. 38 at p. 6 ("The government also notes that from the outset, through his attorney, Joshua Bustle expressed a desire to plead guilty, acknowledge his conduct, and promptly resolve his case. When recommending an appropriate sentence, the government gives *significant* weight to the defendant's early resolution of this case") (emphasis added).

[8] *See*, *e.g.*, *United States v. Bustle*, 1:21-cr-238, Government Sentencing Memoranda, at D.E. 38.

[9] *See United States v. Morgan*, 1:21-cr-00164 at D.E. 22, p. 6 (Government discussion of the factor at issue and questioning whether the Defendant entered these areas).

also weighing in his favor.[10]

In terms of cooperation with law enforcement, separate discussion is warranted.  Mr. Vinson's

activities here, including early, full, and free disclosure to the FBI, continued cooperation with the

FBI throughout this case, an FBI debrief, permitting the FBI to search his electronic devices after he

was charged, and Mr. Vinson's provision to the government of all of his recordings from January 6,

2021, which presumably will aid in the prosecution of others, is nothing short of remarkable

cooperation.  If, as the Government has conceded in other January 6, 2021 cases, there is a spectrum

of conduct and culpability in the events of January 6, 2021, there is also a spectrum of conduct in

terms of cooperation that followed.  Mr. Vinson's activities here would likely warrant a Section 5K1.1

letter, if the Guidelines applied.

The January 6, 2021 investigation continues, but a cogent consideration for *this* Court, in *this*

sentence, is whether or not it should encourage the sort of cooperation that Mr. Vinson exhibited, by

giving due and full consideration to it in the formulation of a sentence?  We submit that to fail to give

significant weight to his cooperation is to tell the world (and the hundreds of other Defendants) that

there is no benefit to significant cooperation.  And, with respect, given the breadth and scope of the

investigation, government resources involved in that investigation, and the sheer expense if hundreds

---

[10] The Government has pointed, at times including its own Sentencing Memoranda, to his wife's
statements, to media, including tradition and social media, and various other aspects of his wife's
conduct, but it is notable that at no time did Mr. Vinson make these statements, and her statements
on social media or to traditional media cannot be attributed to Mr. Vinson.  We suspect that her
Counsel will point out the serious detriment that she has suffered in the loss of her long-time
employment and reputational damage she has suffered from these statements – a detriment shared by
Mr. Vinson for his wife's statements – and by her actions media sources have highlighted Mr.
Vinson's own involvement.  It is no understatement to point out that a variety of media and social
media sources have permanently marked the Vinsons unfavorably and the adage that the Internet
never forgets is patently true.  It is wholly inappropriate for the Government to point to the actions of
his wife, and then even remotely suggest a guilt by association approach with respect to implicating
Mr. Vinson in those statements.

of other misdemeanor Defendants decide that they may as well go to trial, clogging up limited Court resources, the Court should send the exact opposite message. This factor, for this Defendant, is entitled to significant weight in the formulation of any sentence, and the Government, for its part, admits as much.

Mr. Vinson was not involved with planning or coercing the events of January 6, 2021. But, as to the final factor the Court should consider that Mr. Vinson repeatedly, from the outset, through his attorneys, expressed a desire to plead guilty, expressed significant remorse, acknowledge his conduct, and promptly resolve his case. The Government has elsewhere, in another January 6, 2021 case, acknowledged that this is entitled to "significant weight."[11]

### B.      The History and Characteristics of the Defendant

As set forth in the PSR, Thomas Vinson's criminal history is limited to several aged DUI matters, with the disposition unclear as those matters. If the Sentencing Guidelines did apply to his offense of conviction, he would have no criminal history points. USSG § 4A1.2(c)(2). Accordingly, he would be in Criminal History Category I. USSG §§ 4A1.1, 5A. Thomas Vinson holds stable employment. This factor supports a more lenient sentence.

One of the considerations that should not be lost on the court as to Mr. Vinson is that his wife's public statements concerning January 6, 2011, and media coverage of it, caused her to lose her long-term employment. Incarceration of Mr. Vinson (unless on a weekend-report serve out) is likely to also lead to the loss of employment, who has undertaken to obtain substantial overtime to cover for the loss of his wife's income, the probable loss of the family home, and substantial long-term hardship that contravene the public interest in rehabilitation. This Court is all too familiar with the criminal cycle, and is well aware that stable employment leads to long term compliance with the law.

---

[11] *United States v. Bustle*, 1:21-cr-238, Government Sentencing Memoranda, at D.E. 38 at p. 6.

Being filed herewith, are several character letters regarding Mr. Vinson, reflecting community involvement, charitable works, and insights into Mr. Vinson as a person.

**C.      The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law**

The events of January 6, 2021 were both serious, and tragic.  And yet, as reflected above, not every actor that day has equal culpability.  Is it appropriate to treat those who enter and then leave, the same as those who entered and stole or damaged property, those who organized and incited others to act, those who went into sensitive or private areas, or even worse, those who threatened or injured law enforcement?  To ask these questions is to answer them.  The appropriate consideration under this statutory factor is not whether the events of January 6, 2021 were serious (because there is no dispute that they were).  The appropriate consideration instead is to weigh and judge *each Defendant's* activities and involvement in the events of that day, and we submit that consideration of that conduct relative to the factors set forth above, and articulated by the Government in other sentencing memoranda related to January 6, 2021 cases, must be considered in that regard.

Over 650 Defendants have been charged in connection with the events of January 6, 2021.  Some with felonies.  Some with misdemeanors.  Each of these cases involves a wide range of conduct, both before, during, and after January 6, 2021 by the particular Defendant.  Each of these cases should be judged based on the Defendant's conduct, and not the conduct of others.

Relevant to this consideration, also, is the degree of cooperation with law enforcement and early acceptance of responsibility.  Weighing these factors promotes respect for the rule of law, because those who accept responsibility (and relieve the Government early of their obligation to prepare for trial) demonstrate that they acknowledge the wrongfulness of their actions and is an important consideration in promoting respect for the rule of law.  Giving due weight to the degree of cooperation with investigatory agents also promotes respect for the rule of law, and is a sign of

14

remorse.  Given all of these factors, a non-custodial sentence is appropriate here and the Government has conceded as much.

### D.        Adequate Deterrence (Specific and General)

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

Specific deterrence is obtained for the defendant by the prosecution and conviction itself. The personal and reputational consequences the defendant has suffered are more than sufficient to discourage him from engaging in similar conduct.  Mr. Vinson has led a crime-free life.  He has a stable job and a family, and this event has led to widespread embarrassment, both at his work, and within the community he lives in.  His actions, since January 6, 2021, both in his extraordinary cooperation with law enforcement and his attempts to enter an early plea accepting responsibility, demonstrate as much.

As for general deterrence, several observations can be made.  First, the prosecution itself (and the publicity of conviction) all serve as a significant general deterrence.  *See, e.g. Wayte v. United States*, 470 U.S. 598, 607 (1985) (observing that any prosecution has a "general deterrence value"); *United States v. Gamarra*, 940 F.3d 1315, 1321 (D.C. Cir. 2019) (observing that prosecution itself provides general deterrence).  If that is true generally, it is especially true here.

The plea hearing in this case, for a Class B federal misdemeanor, received national and local press.[12]  There is every indication the public castigation of the Defendant by the media will continue

---

[12] https://www.cnn.com/2021/07/27/politics/vinson-plea-capitol-riot/index.html (last visited 10/14/2021); https://www.kentucky.com/news/state/kentucky/article253081073.html (last visited 10/14/2021); https://www.usatoday.com/storytelling/capitol-riot-mob-arrests/ (last visited 10/14/2021).

for the foreseeable future.  Unlike almost any other federal misdemeanor charge (besides other Defendants in January 6 cases), no one in their right mind would expose themselves to the level of vitriol that the media is heaping upon all January 6 Defendants – regardless of the level of their participation or the severity of their particular charges.  The point of this observation is that the publicity involved in these cases is itself providing significant general deterrence unlike any run of the mill federal misdemeanor case.  It might also be observed that google and the articles on this matter will last the Vinsons until the day they die.  When whatever sentence this Court imposes is served out, the headlines will remain.  January 6, 2021 will be a day that lives in infamy, and, for those who entered the Capitol it will be a lifelong stain on their names.

Second, while the events of January 6, 2021 were unacceptable by any measure, and must be deterred from ever occurring again, it would be inappropriate to treat every participant in that event equal, without regard to the circumstances of their involvement, and without regard to the cooperation and acceptance of responsibility they exhibited afterwards.

Indeed, as observed by the district court in the Supreme Court's decision in *Gall v. United States*, probation (or post-release supervision), "rather than an act of leniency, is a substantial restriction of freedom." 552 U.S. 38, 44 (2007) (internal quotation marks omitted). The *Gall* Court emphasized that the defendant would have to "comply with strict reporting conditions." *Id.* The Court also noted that the defendant would "not be able to change or make decisions about significant circumstances in his life, such as where to live or work, which are prized liberty interests, without first seeking authorization from his Probation Officer or, perhaps, even the Court." *Id.*

Given the facts of this case as weighed by the statutory factors, a probationary sentence in this case is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing.

16

E.      **Sentencing Disparities**

The facts of this matter and this Defendant are most similar to *United States v. Morgan-Lloyd*, 1:21-cr-00164.  There, as here, we have a Defendant who did not engage in any preplanning or coordination prior to her entry into the Capitol.  There, as here, we have a Defendant who did not personally engage in acts of violence or destruction of property, or incite the same.  There, as here, we have a Defendant who only remained in the Capitol for a brief period of time and in a limited area of the building.  There, as here, we have a Defendant who cooperated with law enforcement at the time of arrest, including submitting to a voluntary interview and search of her cell phone (and, unlike Morgan-Lloyd, Mr. Vinson full cooperated with law enforcement *prior* to his arrest).  There, as here, we have a Defendant who timely admitted to his actions and accepted responsibility.

There, as here, a sentence of probation[13] (along with the agreed-to restitution of $500 to the United States) is appropriate.

VI.     **Conclusion**

For all these reasons, Mr. Vinson asks this Court to accept the parties' mutual request for a non-incarceration sentence in this matter and to order a sentence of restitution and probation as a just, fair, and reasonable resolution of this matter.

---

[13] We submit that 12 to 24 months of probation is appropriate.  This, in part, is because Mr. Vinson offered at the outset to plead guilty, and has been subject to pre-trial restrictions since his arrest in February, 2021 (all of which, as the most recent report from probation reveals, he has complied with).  We respectfully also suggest that home confinement, as requested by the Government, is not appropriate for this Defendant on these facts (indeed, it was not imposed on Morgan-Lloyd), but community service is appropriate.  Mr. Vinson, through Counsel, has been approached by the House Select Committee on January 6, to testify regarding the events he witnessed on January 6, 2021.  The restriction by the Court on travel to DC has resulted in his inability to agree to do so, and, continuing his pattern of cooperation, we also respectfully request that he be permitted to travel to DC solely for that purpose.

Dated: October 19, 2021

Respectfully submitted,

/s/ Christopher Wiest
Christopher Wiest (DCD KY002)
25 Town Center Blvd, Ste. 104
Crestview Hills, Kentucky 41017
Telephone: (513) 257-1895
Facsimile:  (859) 495-0803
Email: chris@cwiestlaw.com


s/ Christopher Macchiaroli
Christopher Macchiaroli (D.C. Bar No. 491825)
Silverman, Thompson, Slutkin & White LLC
1750 K Street, NW, Suite 810
Washington, D.C. 20006
Telephone: (202) 539-2444
Facsimile:  (410) 547-2432
Email: cmacchiaroli@silvermanthompson.com

*Counsel for Defendant Thomas Vinson*

### CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing upon Counsel for the United States with

the foregoing by filing same in the Court's CM/ECF system, this 19 day of October, 2021.

/s/ Christopher Wiest

18